Filed 3/20/17 (unmodified opn. attached)

## CERTIFIED FOR PARTIAL PUBLICATION[*]

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>MARVIN DARRELL PROFITT,<br><br>     Defendant and Appellant. | A147278<br><br>(Lake County<br>Super. Ct. No. CR931785)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

IT IS ORDERED that the opinion in the above-entitled matter filed on February 27, 2017, is modified as follows and appellant's petition for rehearing is DENIED.

On page 7, in Part II.A., a new footnote No. 4 is to be inserted after the third sentence of the first full paragraph and all following footnotes renumbered accordingly. The new footnote shall read:

> [4] In a petition for rehearing, Profitt for the first time cited *People v. Myles* (2012) 53 Cal.4th 1181 as authority that a trial court may bifurcate properly joined charges. In *Myles*, the trial court bifurcated trial on a set of charges against two defendants arising from a restaurant robbery from trial before the same jury on charges arising from a separate shooting that involved only one of the defendants. (*Id.* at pp. 1199–1200.) The *Myles* court suggested that the trial court properly bifurcated the charges (*id.* at pp. 1201–1203), but the issue on appeal was whether joinder of the charges prejudiced one of the defendants, not whether the trial court had the authority to bifurcate or abused its discretion in bifurcating the charges (*id.* at p. 1200). *Myles* is also distinguishable because the bifurcated charges arose

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.B.

1

from separate incidents, whereas the felony and misdemeanor charges in Profitt's case all arose from a single incident on February 23, 2013.

The modification effects no change in the judgment.


Date:_____          _____ P.J.

Superior Court of Lake County, No. CR931785, Andrew S. Blum, Judge.

Jason E. Tauches, for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Leif M. Dautch and Lauren Apter, Deputy Attorneys General, for Plaintiff and Respondent.

Filed 2/27/17 (unmodified version)

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MARVIN DARRELL PROFITT,<br><br>        Defendant and Appellant. | A147278<br><br>(Lake County<br>Super. Ct. No. CR931785) |

Marvin Darrell Profitt was charged with felony driving under the influence of alcohol (DUI) and misdemeanor driving with a license suspended for prior DUI convictions. The trial court bifurcated trial on three prior DUI convictions that were alleged as sentence enhancements for the felony charges, but rejected Profitt's request to also bifurcate trial of the misdemeanor charges with prior DUI conviction elements. In the published portion of our opinion we reject Profitt's contention that the trial court abused its discretion in refusing to bifurcate trial on the misdemeanors. In the unpublished portion of the opinion, we reject Profitt's arguments that he received ineffective assistance of counsel.

## I.  BACKGROUND

Based on a single incident on February 23, 2013, Profitt was charged with felony DUI (Veh. Code, § 23152, subd. (a);[1] Count 1); felony driving with a blood alcohol content (BAC) of 0.08 percent or higher (§ 23152, subd. (b); Count 2); misdemeanor

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.B.

[1] Undesignated statutory references are to the Vehicle Code.

1

driving with a license suspended or revoked for DUI (§ 14601.2, subd. (a); Count 3); misdemeanor driving with a license suspended or revoked for driving with an excessive BAC (§§ 14601.5, subd. (a), 13353.2; Count 4);[2] and misdemeanor driving with a license suspended or revoked for other reasons (§ 14601.1, subd. (a); Count 5). As to the felony counts, it was alleged for sentencing purposes (see §§ 23550, 23550.5) that Profitt had three prior misdemeanor DUI convictions (one in 2007 and two in 2009) under section 23152.

Profitt sought bifurcation of trial on the prior DUI convictions alleged as sentence enhancements to felony Counts 1 and 2. He also sought bifurcation of trial on the three misdemeanor counts to preclude the jury from hearing about prior DUI convictions that were elements of two of the misdemeanors when deciding the felony counts. The court bifurcated trial on the sentence enhancement allegations, but not the misdemeanors. Both the prosecutor and the court questioned whether the court had authority to bifurcate trial of the misdemeanor and felony counts.

The following evidence was presented at trial. On February 23, 2013, at about 10:00 p.m. in Lakeport, California Highway Patrol Officer Ryan Erickson observed a pickup truck cross a limit line before coming to a complete stop at a stop sign, and later observed the truck's left tires cross over double solid yellow lines as it proceeded down Soda Bay Road. The truck then turned onto a residential street and Erickson thought "perhaps [the driver] would get away with one for the evening. He made it home and he was safe to go." However, the truck made a U-turn and returned to Soda Bay Road. Erickson testified: "[T]hat immediately alerted me to the fact that perhaps the driver's allowing me to pass so I will no longer be following him. . . . I recognized that as what I call a cat and mouse game." Erickson left the road to let the truck pass and then resumed following the truck. "It took [Erickson] a little bit to catch up," and he then saw the truck

_____

[2] Profitt was charged in Count 4 with driving while his license was suspended under either section 13353 (refusal to take a chemical test) or section 13353.2 (driving with an excessive BAC). The record makes clear the prosecutor proceeded on the latter theory, and the trial court so instructed the jury.

2

make an abrupt left turn. Erickson activated his emergency lights and pulled the truck over for an investigation.

Erickson walked to the driver's door and spoke to the driver, Profitt. He noticed Profitt's eyes were red and watery, his breath smelled strongly of alcohol, his speech was slurred, and his demeanor was argumentative, angry or upset. Profitt told Erickson he was on his way home from a casino, he had drunk four Coors Light beers between 5:00 and 9:30 p.m., and his license was suspended. Erickson conducted a number of field sobriety tests (FST's), and Profitt displayed mental and physical impairment in all five tests. After the FST's, Erickson gave Profitt a preliminary alcohol screening (PAS) breath test. At 10:34 p.m., the PAS reading of his BAC was 0.113 percent, and at 10:36 p.m. the reading was 0.109 percent. Erickson concluded Profitt was too impaired to drive and placed him under arrest.[3] Profitt took an evidentiary breath test (EPAS) at 11:00 p.m. and again at 11:04 p.m. The EPAS registered a BAC of 0.13 percent.

Erickson's vehicle was equipped with a mobile video/audio recording system programmed to retain recordings from one minute prior to activation of the vehicle's emergency lights. The recording of Profitt's traffic stop was played for the jury.

Anthony Valerio, a senior criminalist from the California Department of Justice with training in forensic alcohol analysis, testified that the PAS and EPAS test results indicated Profitt's BAC was rising during the interval between the tests. For Profitt's BAC to have risen from a hypothetical 0.07 percent when stopped by Erickson to the 0.13 percent EPAS measurement one hour later, Profitt would have had to have drunk approximately three and a half beers (42 ounces of 4.2 percent beer or an equivalent amount of alcohol) over time to get his BAC up to 0.07 percent and then drink the equivalent amount of alcohol all at once just prior to driving so that much of the latter

---

[3] California Highway Patrol Explorer Ryan Call, a young volunteer who was interested in law enforcement, was a "ride-along" with Erickson at the time of the stop. Call testified that he stood by Erickson while Profitt performed the FST's, and Profitt smelled of alcohol and performed poorly on the FST's. Profitt was also wobbly, a bit argumentative, and his speed was slightly slurred. He seemed too impaired to drive safely.

alcohol remained in his stomach at the time of the stop. On cross-examination, defense counsel posited that Profitt might have drunk shots of hard alcohol just before leaving the casino. Valerio said if Profitt did not have the alcohol equivalent of three and a half beers in his stomach when stopped by Erickson, the breath test results and Profitt's performance on the FST's indicated that Profitt—prior to the stop—was too impaired to drive.[4]

Profitt's Department of Motor Vehicles (DMV) record was admitted in evidence. The record disclosed a 1998 conviction under section 23152, subdivision (a); a 2007 conviction under 23152, subdivisions (a) and (b); and two 2009 convictions for 23152, subdivision (a). The court told the jury the record was relevant only to the misdemeanor license suspension counts and were "not to [be] consider[ed] for any purpose as to the DUI charges, Counts 1 and 2. It has nothing to do with those."

The defense presented expert testimony by Jeffery Louis Zehnder, a forensic toxicologist, who opined that Profitt's reported performance on the FST's did not conclusively show he was impaired while driving. Only three of the FST's given (horizontal gaze nystagmus, one-leg stand, and walk and turn) were standardized tests accepted by the National Highway Traffic Safety Administration. While the administered Romberg test was supported by scientific studies and had some value, Profitt's performance on the test did not indicate alcohol impairment. Further, Profitt was 63 years old at the time of the FST's and the walk-and-turn and one-leg tests were not very useful in detecting impairment in older people, who tend to have balance problems without alcohol consumption. Zehnder testified that Profitt's rising BAC level indicated he was absorbing alcohol at the time of the tests, which would tend to overstate BAC results, and Profitt's BAC probably was lower when he was driving than when he was tested. Absorption rates also vary widely among individuals and circumstances, and a person who took "four shots of 12 ounces simultaneously" could reach a peak BAC anywhere as long as an hour and a half thereafter. "[E]specially with [Profitt's] relatively

_____

[4] Valerio's testimony also implied that Profitt's BAC would have been 0.08 percent or above in this scenario.

4

good performance on the [FST's], . . . there's no way to conclude he was at or above an .08" when he was stopped.

The prosecutor began his closing argument by discussing the misdemeanor charges and Profitt's prior DUI convictions. The court again admonished the jury that the DMV record was not relevant to Counts 1 or 2. Regarding felony Count 2, the prosecutor argued that for Profitt's BAC to have been below 0.08 percent when he was driving, the jury would have to believe Profitt had three and a half beers all at once after already drinking three and a half beers, and then "with all this unabsorbed booze sitting in his stomach, he gets in his car and begins to drive . . . home . . . clear on the other side of the lake in a ridiculous attempt to race the alcohol home. . . . [¶] . . . [¶] . . . Is that a drinking pattern that we see often? . . . It is much more probable and . . . common that a person simply has one for the road, not three and a half for the road, . . . [¶] . . . [and] then it necessarily follows mathematically that he was an .08 or more at the casino before he started driving." On Count 1, the prosecutor reviewed the evidence that Profitt was too impaired to drive: his Vehicle Code violations while driving, his physical appearance and impairment, and his exercise of poor judgment in choosing to drive after drinking and with a suspended license.

Defense counsel began his closing argument by critiquing three themes in the prosecution's closing: fear ("we don't want to have those big, bad drunk drivers on the road. Therefore, . . . [if y]ou think he's a little bit guilty, convict him"); the misdemeanors ("he's committed prior drunk driving offenses, therefore he must be guilty now . . . even though the judge has instructed you to the contrary"); and "bad math" ("an assumption . . . that the absorption rate is a fixed amount for every person"). Counsel conceded guilt on the misdemeanors and repeatedly reminded the jury that the prior DUI convictions could not be considered with respect to the felonies. On the felony counts, he minimized evidence of Profitt's physical impairment during the traffic stop and faulted Erickson for not videotaping the FST's. Counsel also emphasized Profitt's rising BAC results, Zehnder's testimony that absorption rates vary greatly among individuals, and the testing devices' margins of error. He argued it was not a crime to simply drink and drive,

5

and the jury needed to find beyond a reasonable doubt that Profitt was impaired or had a BAC of 0.08 percent or greater while driving.

In rebuttal argument with respect to the misdemeanor charges, the prosecutor encouraged the jury to look at Profitt's DMV record to see that Profitt "was told . . . ten times" his license was suspended, but "despite prior warnings, [he] was out on the road again." He also argued, "[T]he important message that we want to send here is the message to this defendant, 'Don't do this. This is dangerous. It's so dangerous, it's criminal.' "

The jury convicted Profitt on all five counts. Profitt and the prosecution waived their rights to a jury trial on the prior conviction sentence enhancement allegations, and Profitt admitted the allegations. Before sentencing, Profitt retained new counsel and filed a motion for new trial. Profitt argued in part that he received ineffective assistance of counsel because his trial counsel made improper comments during closing argument and failed to request bifurcated trial of the misdemeanors. When the prosecutor noted that Profitt's trial counsel had requested such bifurcation, Profitt apparently modified his argument and contended the court erred in denying the request. The court denied the new trial motion.

The court sentenced Profitt to three years in county jail (Pen. Code, former § 1170, subd. (h)(5)(A)), the last year on mandatory supervision. The sentence consisted of a three-year upper term for Count 2; a three-year upper term for Count 1, stayed under Penal Code section 654; a six-month term on Count 3 to run concurrently with the felony term; and six-month concurrent terms on Counts 4 and 5, stayed under Penal Code section 654. Profitt was also ordered to serve concurrent jail time for related probation violations.

## II.    DISCUSSION

Profitt argues (1) the court erred in refusing to bifurcate trial on the misdemeanor counts, and (2) he received ineffective assistance of counsel because of his trial counsel's demeaning statements in closing argument and failure to seek dismissal of the case based on the failure to videotape the FST's.

A.      *Bifurcation*

Profitt argues the trial court erred in refusing to bifurcate trial of the misdemeanors from the felonies to preclude evidence of prior DUI convictions during the guilt phase of the felony trial.  The People argue a trial court has no discretion to bifurcate properly-joined charges where a prior conviction is a substantive element of one of the charges.  We agree no authority supports the type of bifurcation Profitt seeks here.  Even if we were to assume for purposes of argument the trial court had discretion to grant Profitt's bifurcation request, we would conclude the court did not abuse its discretion in denying the request.

1.      *Background*

As noted *ante*, Profitt moved in limine to bifurcate trial of the prior conviction allegations and misdemeanors from the felony counts.  At the same time, Profitt sought to exclude any reference at trial to his prior convictions or license suspensions.  Opposing bifurcated trial of the misdemeanors, the prosecutor argued misdemeanor Counts 3 and 4 "require[d] presentation of the . . . prior DUI convictions as necessary elements of the charges," and the prosecutor was "aware of no legal authority—and the defense has presented none—allowing for the bifurcation of presently-charged counts (not prior convictions) from a criminal trial."

At a hearing on the motions, the court said, "I've never heard of bifurcating counts in a case" in 30 years of service on the bench.  Defense counsel insisted bifurcation was discretionary under "a 352 analysis"[5] and trial of the misdemeanors and felonies together would be highly prejudicial with only marginal overall benefit in terms of judicial economy.  The court asked for authority and defense counsel did not cite any other than the "352 analysis."  The court denied the request to bifurcate trial of the misdemeanors, explaining:  "[U]nder 352, I don't see how this could be . . . significantly more prejudicial

---

[5] Section 352 of the Evidence Code provides:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

than probative. It's all part of the same transaction. I don't think [the jury is] going to be shocked and overwhelmed he didn't have a license, therefore he must be guilty of a felony. That's a real stretch logically." Defense counsel indicated Profitt would enter a plea to the misdemeanors to avoid evidence of the prior DUI convictions before the jury, but Profitt declined to make any admissions.

When the prosecution offered Profitt's DMV record into evidence during its case-in-chief, defense counsel objected under Evidence Code section 352 because the record disclosed Profitt's prior DUI convictions. The court overruled the objection because "it's an element of Count 3." Defense counsel asked for a limiting instruction, but commented that he did not think the instruction would be effective in protecting Profitt from undue prejudice. The court gave the instruction.

In response to Profitt's motion for new trial, the court explained that the request to bifurcate trial of the misdemeanors was denied because "352 did not—it did not appear to the Court that when the jury is already hearing evidence of felony DUI—or, excuse me, DUI—they don't know it's a felony. They don't know the priors—the DUI, that the evidence that his license is suspended is not to be excluded under 352. It's not—it's probative value—of course, the DA has a right to—has a burden to prove those elements. But I don't think that it was the type of evidence that was shocking to the jury, that would override their ability to be fair on the DUI charges, that someone who also has a suspended license is pretty trivial. For all these reasons, I den[ied] that bifurcation. I did grant the bifurcation as to his prior DUI convictions [as sentence enhancement allegations]."

2.     *Analysis*

Profitt does not dispute the misdemeanor and felony charges were "connected together in their commission" and properly charged in a consolidated pleading. (Pen. Code, § 954.) He did not suggest in the trial court, and does not argue here, that there was any basis to sever the misdemeanors for separate trial.

As Profitt notes in his opening brief, the disputed issues at trial were "whether [Profitt] was impaired by alcohol, had a [BAC] at or above 0.08 percent while driving,

8

and whether [his] license was suspended." Count 3 of the information alleged Profitt knew his driver's license was suspended at the time of his arrest as a result of a prior conviction for driving under the influence of an alcoholic beverage and drug, and their combined influence. Count 4 of the information alleged Profitt also knew his driver's license was suspended at the time of his arrest as a consequence of a prior conviction for driving with an excessive BAC level.[6] The prosecution proved the elements of Counts 3 and 4 by introducing, among other documents, Profitt's DMV abstract, which reflected three prior DUI convictions (one in 2007, and two in 2009).

A not guilty plea puts every element of every charged offense in issue. (*People v. Balcom* (1994) 7 Cal.4th 414, 422.) The basis of a driver's license suspension is an element of the misdemeanor offenses charged here. (See §§ 13353, 13353.2, 14601, 14601.1, 14601.2, 14601.5; CALCRIM No. 2220.)[7] "Numerous decisions note that when a prior conviction (or similar legal-status factor) is an element of a substantive offense, failure to require a jury determination on that element may improperly impair the

---

[6] Count 5 alleged Profitt's license was suspended or revoked for a reason other than one listed in sections 14601 and 14601.2. At trial, the jury was advised that Profitt's license had been suspended for failure to appear and for cancellation of his insurance certificate.

[7] CALCRIM No. 2220 provides: "The defendant is charged [in Count ___ ] with driving while (his/her) driving privilege was (suspended/ [or] revoked) [in violation of *<insert appropriate code section[s]>*]. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant drove a motor vehicle while (his/her) driving privilege was (suspended/ [or] revoked) [for _____ *<insert basis for suspension or revocation>*]; [¶] AND [¶] 2. When the defendant drove, (he/she) knew that (his/her) driving privilege was (suspended/ [or] revoked). [¶] [If the People prove that: [¶] 1. The [DMV] mailed a notice to the defendant telling (him/her) that (his/her) driving privilege had been (suspended/ [or] revoked); [¶] 2. The notice was sent to the most recent address reported to the department [or any more recent address reported by the person, a court, or a law enforcement agency]; [¶] AND [¶] 3. The notice was not returned to the department as undeliverable or unclaimed; [¶] then you may, but are not required to, conclude that the defendant knew that (his/her) driving privilege was (suspended/ [or] revoked).] [¶] [If the People prove beyond a reasonable doubt that a court informed the defendant that (his/her) driving privilege had been (suspended/ [or] revoked), you may but are not required to conclude that the defendant knew that (his/her) driving privilege was (suspended/ [or] revoked). . . ."

9

People's ability to prove and secure legitimate convictions of those offenses. (*People v. Robles* (1970) 2 Cal.3d 205, 213 ['A prosecutor is not required to stipulate to the existence of any elements of the crime he is attempting to prove where the stipulation will impair the effectiveness of the prosecutor's case'].) For example, allowing a defendant who has been charged under [Penal Code former] section 12021 (ex-felon in possession of concealable firearm) to admit his ex-felon status and thereby keep that information from the jury would undoubtedly impair the prosecution's ability to secure a conviction." (*People v. Bouzas* (1991) 53 Cal.3d 467, 479.)

Profitt cites no case authority for the proposition that a court may bifurcate trial of transactionally-related offenses, but instead argues the court had the power to bifurcate counts pursuant to its inherent authority to control the proceedings before it under Penal Code 1044.[8] He relies on *People v. Calderon* (1994) 9 Cal.4th 69 (*Calderon*), which addresses a different bifurcation issue.

*Calderon* addresses bifurcation of prior convictions that are alleged as sentencing enhancements, the type of bifurcation the trial court granted in this case. In that context, the Supreme Court held that "a trial court has the discretion, in a jury trial, to bifurcate the determination of the truth of an alleged prior conviction from the determination of the defendant's guilt of the charged offense, but is not required to do so if the defendant will not be unduly prejudiced by having the truth of the alleged prior conviction determined in a unitary trial." (*Calderon, supra,* 9 Cal.4th at p. 72.) The high court first explained that trial courts have *discretion* to bifurcate prior conviction allegations. Penal Code section 1025 "provides that, when a defendant pleads not guilty and denies having suffered an alleged prior conviction, 'the question whether or not he has suffered such previous conviction *must be tried by the jury which tries the issue upon the plea of not guilty . . . .'* [¶] . . . [¶] . . . [However, Penal Code] section 1025 does not require that the

---

[8] "It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved." (Pen. Code, § 1044.)

truth of a prior conviction allegation be determined by the jury *at the same time* it decides whether the defendant is guilty of the charged offense. Nothing in the language of [Penal Code] section 1025 prohibits a trial court from bifurcating the determination of the truth of a prior conviction allegation from the determination of the defendant's guilt or innocence of the charged offense." (*Calderon*, at pp. 73–74, italics added.) "General authority to bifurcate trial issues may be found . . . in [Penal Code] section 1044, which vests the trial court with broad discretion to control the conduct of a criminal trial: 'It shall be the duty of the judge to control all proceedings during the trial . . . with a view to the expeditious and effective ascertainment of the truth regarding the matters involved.' " (*Id.* at pp. 74–75.)

The *Calderon* court then observed that a unitary trial on charged offenses and prior conviction allegations would often unduly prejudice a defendant. "Having a jury determine the truth of a prior conviction allegation at the same time it determines the defendant's guilt of the charged offense often poses a grave risk of prejudice. As this court has recognized: 'Evidence that involves crimes other than those for which a defendant is being tried is admitted only with caution, as there is the serious danger that the jury will conclude that defendant has a criminal disposition and thus probably committed the presently charged offense.' " (*Calderon, supra,* 9 Cal.4th at p. 75.) "Although the state has a legitimate interest in conserving limited judicial resources, it would appear that conducting a unitary trial rather than a bifurcated one under the above described circumstances would save little, if any, time. . . . [¶] We conclude, therefore that the denial of a defendant's timely request to bifurcate the determination of the truth of a prior conviction allegation from the determination of the defendant's guilt is an abuse of discretion where admitting, for purposes of sentence enhancement, evidence of an alleged prior conviction during the trial of the currently charged offense would pose a substantial risk of undue prejudice to the defendant." (*Id.* at pp. 77–78.) The court noted that "the risk of undue prejudice posed by the admission of evidence of a prior conviction, considered against the minimal inconvenience generally caused by

11

bifurcating the trial, frequently will militate in favor of granting a defendant's timely request for bifurcation." (*Id.* at p. 79.)

When a prior conviction is an *element* of a charged offense, however, the Supreme Court has not required or condoned bifurcation. In *People v. Valentine* (1986) 42 Cal.3d 170, 173 (*Valentine*), the defendant was charged with two counts of armed robbery, and in a third count with possession of a concealable firearm by an ex-felon (Pen. Code, former § 12021), having been previously convicted of robbery. The defendant offered to stipulate to the prior conviction and asked the court to "sanitize" the information so the jury would not be informed of the fact or nature of his prior conviction. The trial court declined to do so, although the jury was instructed that the prior conviction could be considered only for purposes of the ex-felon element of the firearm possession count. (*Valentine*, at p. 176.) The Supreme Court held that the state Constitution[9] required proof "in open court" of the *fact* of ex-felon status when that status is a substantive element of a current charge. (*Id.* at pp. 181–182 [acknowledging Prop. 8's "proof in open court" provision was intended to overrule *People v. Hall* (1980) 28 Cal.3d 143, which precluded the jury learning either the fact or the nature of a prior conviction if the defendant offered to stipulate to ex-felon status].)[10] In a footnote, the *Valentine* court addressed a defense argument that a trial court could *bifurcate* trial of ex-felon status from trial of the other elements of the crime without violating the constitutional provision. (*Valentine*, at p. 179, fn. 3 [defendant "proposes that the jury may learn of defendant's ex-felon status . . . only after it has returned a finding" on the other element or elements of the crime].) Either the jury or the court could determine the defendant's ex-felon status after the jury found the other elements of the crime were proven. The high court rejected both

---

[9] Article I, section 28 of the California Constitution was enacted by voter adoption of Proposition 8 in 1982. Subdivision (f)(4) of this constitutional provision provides, "When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court."

[10] The *Valentine* court, however, held that the *nature* of the defendant's prior convictions was not relevant in that case and should not go to the jury. (*Valentine, supra,* 42 Cal.3d at pp. 181–182.)

suggested forms of bifurcation as inconsistent with the voters' intent in enacting section 28, subdivision (f) of article I of the California Constitution.  (*Valentine*, at p. 179, fn. 3.)

Subsequently, in *People v. Sapp* (2003) 31 Cal.4th 240 (*Sapp*), the Supreme Court specifically rejected a contention that *Valentine* authorized bifurcation of *related charges* where a prior conviction was an element of one of the charges.  (*Id.* at pp. 260–262 [proposed bifurcation of felon in possession of concealable firearms count from multiple murder charges].)  The *Sapp* court held that *Valentine* "allow[ed] the trial court *only two options* when a prior conviction is a substantive element of a [properly joined] current charge:  Either the prosecution proves each element of the offense to the jury, or the defendant stipulates to the conviction and the court 'sanitizes' the prior by telling the jury that the defendant has a prior felony conviction, without specifying the nature of the felony committed." (*Sapp,* at p. 262, italics added.)

We conclude that the *Valentine*/*Sapp* rule applies in this case as well.  We acknowledge that *Valentine* and *Sapp* do not directly address the sort of bifurcation Profitt sought in this case.  Both *Valentine* and *Sapp* were based on the portion of California Constitution, article I, section 28, subdivision (f), which expressly applies only to prior *felony* convictions that are elements of *felony* offenses.  (*Valentine, supra,* 42 Cal.3d at pp. 173, 176–177; *Sapp, supra,* 31 Cal.4th at p. 261.)  Here, Profitt seeks bifurcation of *misdemeanor* counts that include prior *misdemeanor* convictions as elements of the crimes.  At least one intermediate appellate court has, however, followed *Valentine* where proof of a prior misdemeanor battery conviction made the defendant's possession of a firearm a felony offense under Penal Code former section 12021, subdivision (c)(1).  (*People v. Wade* (1996) 48 Cal.App.4th 460, 468–469 (*Wade*).)  In *Wade*, the defendant offered to stipulate to his misdemeanor convictions in order to prevent the jury from learning of the fact of his convictions.  (*Id*. at p. 464.)  Recognizing the state Constitution's "proof in open court" mandate did not apply to prior misdemeanor convictions, the reviewing court nevertheless held the defendant had no

13

right to stipulate to the prior conviction and thereby preclude the jury from learning of the fact he had suffered that conviction. (*Id.* at p. 467.)[11]

We do not lightly dismiss the prejudice inherent in disclosing to the jury a defendant's prior convictions that are similar to charged offenses. (See *Wade, supra,* 48 Cal.App.4th at p. 469 [factors affecting potential for prejudice include the prior conviction's closeness in time to, similarity with, and seriousness or inflammatory nature relative to the charged offenses].) The trial court's recognition of potential prejudice is evident in its bifurcation of the sentence enhancement allegations from the guilt phase of the felony trial. However, it would be anomalous to articulate a more stringent rule for introduction of evidence of misdemeanor priors as elements of charged offenses than the rule established in *Valentine* and *Sapp* for introduction of evidence of felony priors that are elements of charged offenses. We find no basis, and no authority, for application of a different rule in these circumstances. Profitt had other means to obviate or eliminate the prejudice from proof of the fact and nature of his prior convictions, which he declined to pursue. He made no offer to stipulate to the prior convictions underlying his license suspension, so the court was never required to address in what manner, if any, the convictions could be sanitized. He declined, as was his right, to enter pleas to the misdemeanors.[12] The remaining alternative was to allow the prosecution to prove each

---

[11] *Wade*, however, also held (as did *Valentine, supra,* 42 Cal.3d at pp. 181–182 & *Sapp, supra,* 31 Cal.4th at p. 262) that the *nature* of the prior conviction was not relevant to the possession charge, and it was therefore error (albeit harmless in that case) for the trial court to decline the defendant's stipulation to the mere *fact* of his conviction. (*Wade, supra,* 48 Cal.App.4th at pp. 468–469.) Here, unlike *Valentine*, *Sapp* and *Wade*, the nature of the prior convictions *were* relevant to the misdemeanor charges because two of the misdemeanors required proof of a license suspension due to *specific* DUI-related prior convictions.

[12] Profitt ultimately presented no defense to the license suspension charges, and admitted the charged priors in the bifurcated bench trial of the sentencing enhancements. A defendant's tactical decision not to contest an essential element of the offense does not relieve the prosecution of its burden of proving every element. (*Estelle v. McGuire* (1991) 502 U.S. 62, 69.)

14

element of the misdemeanor offenses to the jury—with the consequent disclosure of the fact and nature of those convictions.

Even if we were to accept Profitt's questionable argument that the trial court had the *authority* under Penal Code section 1044 to bifurcate trial of the misdemeanors, we would not find that the trial court abused its discretion in denying bifurcation in this case. Generally, a trial court does not abuse its discretion by requiring joint trial of properly-joined charges (see *People v. Hernandez* (2004) 33 Cal.4th 1040, 1050 [comparing a court's discretion to sever properly-joined charges with the discretion to bifurcate, while acknowledging analogy imperfect].) In the absence of statutory or case authority to the contrary, we conclude the trial court here did not abuse its discretion in requiring a concurrent trial of the felonies and misdemeanors.

B.    *Ineffective Assistance of Counsel**

"Under both the Sixth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a criminal defendant has the right to the assistance of counsel. [Citations.] The ultimate purpose of this right is to protect the defendant's fundamental right to a trial that is both fair in its conduct and reliable in its result. [Citations.] [¶] Construed in light of its purpose, the right entitles the defendant not to some bare assistance but rather to *effective* assistance. [Citations.] Specifically, it entitles him to 'the reasonably competent assistance of an attorney acting as his diligent conscientious advocate.' [Citations.] [¶] . . . [¶] 'A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or . . . sentence has two components.' [Citations.] 'First, the defendant must show that counsel's performance was deficient.' [Citations.] Specifically, he must establish that 'counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' [Citations.] [¶] In determining whether counsel's performance was deficient, a court must in general exercise deferential scrutiny." (*People v. Ledesma* (1987) 43 Cal.3d 171, 215–216.)

---

* See footnote, *ante*, page 1.

15

When an ineffective assistance of counsel claim is raised on direct appeal, " ' "[if] the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' [Citation.] A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding." (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267.)

1. *Improper Closing Argument*

Profitt first argues he received ineffective assistance because of certain comments his trial counsel made during closing argument. Profitt's substitute counsel raised this issue in the motion for new trial. The trial court rejected the claim, finding the comments were reasonable strategic choices. We affirm.

a. *Background*

After the court denied Profitt's motion to bifurcate the misdemeanor counts, defense counsel indicated Profitt would plead guilty to the misdemeanors. Profitt, however, refused to do so. In his opening statement, defense counsel told the jury, "It's going to be clear to you eventually that [Profitt] was driving without a proper license. . . . There may be some quibbling issues over why the license was suspended, but really as a practical matter, those make zero difference. The fact of the matter is his license was suspended. [¶] And as to Counts 3 through 5, some or all of those are likely to be found to be true." In closing argument, defense counsel said: "Mr. Profitt did not stand before you and present evidence contradicting [his DMV record]. It's a nonissue. *The only reason we're hearing about the DUIs is because, amongst other things, Mr. Profitt is too much of a fool to plead guilty to them and keep it out of court*." (Italics added.) Counsel thereafter repeatedly reminded the jury that the prior DUI convictions were not to be considered with respect to the felony counts.

In his motion for new trial, Profitt argued the italicized "fool" comment amounted to ineffective assistance of counsel. The court ruled that the comment "was appropriately a strategic move. I observed it. And I also heard the tone of voice, the presentation. In

16

my opinion, it was [trial counsel's] attempt to depict his client as unsophisticated and thereby engender sympathy with the jury. I know that's what was intended. He was only referring to the minor charges in this case to which there was no defense. . . . [¶] . . . And you['ve] got to look at the entire case as a whole . . . . [Trial counsel is] a very effective attorney."

Profitt's motion for new trial also criticized another part of the closing argument. Defense counsel argued: "It is not a crime in California to drink and drive or even to be a little bit drunk. . . . The fear that is thrown at you, 'Oh, we can't have anybody on the road . . . [who took] a drink . . . .' . . . [T]hat's not a crime. Maybe it should be. *I mean, I'm really not a drinker, so I'm not probably the guy that Mr. Profitt should have found to do his case for him, I suppose. But I'm not much of a drinker, so I'm certainly right there with* [*the prosecutor*]. I don't want fools out there on the road drinking and driving any more than any of the rest of you do." Profitt argued the italicized "not a drinker" comment also amounted to ineffective assistance of counsel. The court did not specifically address this comment when it denied the motion for new trial.

        b.    *Analysis*

We agree with the trial court that counsel's "fool" comment was a strategic move to concede Profitt's obvious guilt of the misdemeanor charges and thereby establish credibility with the jury. "[G]ood trial tactics often demand complete candor with the jury[.] . . . [I]n light of the weight of the evidence incriminating a defendant, an attorney may be more realistic and effective by avoiding sweeping declarations of his or her client's innocence." (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1060–1061.) Significantly, the trial court specifically noted counsel's demeanor when making the comment, implying that counsel effectively communicated his purpose to the jury and did not inadvertently slight his client. We defer to the trial court's assessment of such matters. (Cf. *People v. Lenix* (2008) 44 Cal.4th 602, 626–627 [appellate courts defer to trial court assessment of prosecutor's demeanor in making peremptory challenges allegedly based on race].) The trial court also reasonably found counsel's apparently dismissive "fool" comment was an attempt to portray Profitt as unsophisticated and

17

thereby engender some sympathy. (See *People v. McGautha* (1969) 70 Cal.2d 770, 784 [reference to " 'slob type defendants' " may have been intended to "elicit some feeling of sympathy from the jury"].)

We also conclude the "I'm really not a drinker" comment could have been a strategic move by counsel to gain respect from the jury by condemning irresponsible behavior, but nonetheless insisting on the jury's duty to acquit if the specific legal elements of the charged crime were not proved. In *People v. Wade* (1988) 44 Cal.3d 975, for example, "trial counsel, faced with defending an appalling crime and responding to the prosecutor's pointed suggestions of a fabricated defense, made a [reasonable] tactical choice to candidly admit his client's guilt, acknowledge the heinous nature of the offense, and concentrate on the theory that defendant . . . was insane or incapable of forming the requisite criminal intent when the offense was committed. The fact that this argument ultimately failed is not a negative reflection on counsel's competence." (*Id.* at pp. 986–987, fn. omitted; see *People v. McGautha, supra,* 70 Cal.2d at pp. 783–784 [not error to tell jury defendant and his counsel would accept whatever verdict jury might deliver because "insist[ance] in the face of very weighty evidence of guilt that [defendant] be acquitted, counsel might well have impaired his credibility at the penalty phase"].) Notably, Profitt's counsel framed this part of his argument by urging the jury to adhere to its duty to apply the law and not be swayed by fear: "It is not a crime in California to drink and drive or even to be a little bit drunk. . . . The fear that is thrown at you, 'Oh, we can't have anybody on the road . . . [who took] a drink . . . .' " He expressed sympathy for the underlying fear—drinking and driving is "not a crime. Maybe it should be. I mean, I'm really not a drinker . . . . I'm certainly right there with [the prosecutor]. I don't want fools out there on the road drinking and driving any more than any of the rest of you do." Counsel then appealed to the jury's sense of justice: "what I want more than stopping that is that we have a system of justice that does not convict people because we don't like them . . . . [¶] 'Freedom is not worth having if it does not connote freedom to err." He went on to argue: " 'You can protect your liberties in this world only by protecting the other man's freedom. You can be free only if I'm free.' . . . [W]e may not

18

want to allow drunks on the road. . . . But that does not mean that you're allowed to suspend[] the rules of criminal justice and simply say, 'I'm going to disregard this conclusion, this reasonable inference, because I don't like it.' " Again, the fact this reasonable approach to closing argument was not effective in obtaining an acquittal does not mean Profitt received ineffective assistance of counsel.

2.    *Motion to Dismiss for Failure to Preserve Evidence*

Profitt argues for the first time on appeal that he received ineffective assistance because his trial counsel failed to move for dismissal based on the government's failure to record the FST's on the patrol car's mobile video/audio recording system (MVARS). He has not established reversible error.

a.    *Background*

Erickson directed Profitt to perform FST's in the street to the side of the patrol car and thus out of view of the MVARS camera as it was positioned when Erickson pulled Profitt over. Consequently, the video did not capture the FST's. Erickson acknowledged he was trained to capture anything of evidentiary value on the MVARS video whenever reasonably feasible, but he explained the FST's were conducted in the street for safety reasons. "There[ have] been many instances of patrol vehicles that have been hit from behind while officers are on stops. So generally if we can at all avoid it, we generally don't stand in front of the patrol vehicle when we're conducting any type of investigation. And if we are, . . . we try to limit it to a small amount of time." He further noted that the street provided a flat, dry surface to conduct the tests, implying that the shoulder of the road in front of the patrol car was not flat or dry. On cross-examination, Erickson acknowledged the video showed him and Call standing in front of the patrol vehicle for several minutes and tow truck drivers standing in that area as well. He also acknowledged the video demonstrated it was a "fairly flat surface" in front of the patrol car. Erickson explained the FST's were conducted on the street for the aforementioned safety reason as well as to avoid bright lights shining in his or Profitt's face. He acknowledged, however, the dashboard camera could swivel "[w]ith a lot of effort."

19

Erickson wore a body microphone that was connected to the MVARS device, but the body microphone was not working during Profitt's traffic stop. Consequently, the only audio captured on the recording was from a second microphone inside the patrol car. Erickson could not recall reporting the malfunction in his body microphone so it could be fixed. He acknowledged Profitt's statements at the end of the video were neither argumentative, hesitant, nor confused, in contrast to his description of Profitt's prior unrecorded statements.

    b.  *Analysis*

   The prosecution's "failure to retain evidence violates due process only when that evidence 'might be expected to play a significant role in the suspect's defense,' and has 'exculpatory value [that is] apparent before [it is] destroyed.' (*California v. Trombetta* (1984) 467 U.S. 479, 488–489.) In that regard, the mere 'possibility' that information in the prosecution's possession may ultimately prove exculpatory 'is not enough to satisfy the standard of constitutional materiality.' (*Arizona v. Youngblood* (1988) 488 U.S. 51, 56, fn. *.) And whereas under *Brady v. Maryland* [(1963)] 373 U.S. 83, the good or bad faith of the prosecution is irrelevant when it fails to *disclose* to the defendant material exculpatory evidence (*id*. at p. 87), a different standard applies when the prosecution fails to *retain* evidence that is potentially useful to the defense. In the latter situation, there is no due process violation unless the accused can show bad faith by the government. (*Arizona v. Youngblood, supra,* 488 U.S. at p. 58.)" (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 8.) We take the following analytical approach: "First, did the destroyed evidence meet either the 'exculpatory value that was apparent' or the 'potentially useful' standard for materiality under *Trombetta* or *Youngblood*, respectively? [Citations.] Second, if the evidence qualified as 'potentially useful' under *Youngblood* but did not meet the *Trombetta* standard, was the failure to retain it in bad faith?" (*People v. Alvarez* (2014) 229 Cal.App.4th 761, 774.)

   Here, no evidence was destroyed or discarded. Profitt's argument is really that the police failed to *create* evidence, and were required to record the FST's, at least where they had an opportunity to do so. We are aware of no authority for that proposition, and

20

Profitt cites none. Any video recording would have been, in any event, only potentially useful to the defense. Erickson reported Profitt failed all five of the tests, and his testimony was corroborated by the essentially uncontested results of the pre- and post-arrest breath tests. It is unlikely, therefore, that a video and audio recording of the FST's would have exculpated Profitt. Because the evidence was only potentially useful, failure to capture the evidence—even if we were willing to assume such conduct was equivalent to failing to *preserve* evidence—would potentially violate due process only if Profitt could demonstrate Erickson acted in bad faith. There was no substantial evidence of bad faith. Trial counsel faulted Erickson for not reporting the problem with his body microphone, choosing to conduct the FST's in the street rather than in front of the patrol car, and not swiveling the camera. However, all of those acts are as consistent with negligence or a difference in professional judgment as they are with bad faith. Because there were no grounds for dismissal or any other sanction (such as an instruction allowing the jury to draw a negative inference from the absence of the evidence), trial counsel was not ineffective in failing to seek such sanctions. We note trial counsel raised questions about the failure to record the FST's both during cross-examination of witnesses and in closing argument, thus well serving his client by making a case for reasonable doubt on a trial record that was challenging for the defense.

## III. DISPOSITION

The judgment is affirmed.

21

_____

BRUINIERS, J.


WE CONCUR:


_____

JONES, P. J.


_____

NEEDHAM, J.


A147278

Superior Court of Lake County, No. CR931785, Andrew S. Blum, Judge.

Jason E. Tauches, for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Leif M. Dautch and Lauren Apter, Deputy Attorneys General, for Plaintiff and Respondent.